**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STACY BAKER, | ) | CASE NO. 1:23-CV-01988-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | MEMORANDUM OPINION & ORDER |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Stacy Baker ("Baker" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 5). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

## II. Procedural History

On August 31, 2021, Claimant filed applications for DIB and SSI, alleging a disability onset date of January 1, 2021. (ECF No. 6, PageID #: 275). The applications were denied initially and upon reconsideration, and Baker requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On October 13, 2022, an ALJ held a hearing, during which Baker, represented by counsel, and an impartial vocational expert testified. (*Id.*). On November 28, 2022, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #:

1

275-287). The ALJ's decision became final on August 18, 2023, when the Appeals Council declined further review. (*Id.* at PageID #: 18).

On October 12, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9-1, 11). Claimant asserts the following assignments of error:

> (1) WHETHER THE ALJ ERRED IN FAILING TO FIND THAT MS. BAKER'S PRESCRIBED ROLLATOR WALKER WAS MEDICALLY NECESSARY
>
> (2) WHETHER THE ALJ FAILED TO EVALUATE THE CLAIMANT'S DIAGNOSES OF RHEUMATOID ARTHRITIS, DISH, AND SENSORY NEUROPATHY, AT STEPS TWO AND THREE OF THE SEQUENTIAL ANALYSIS
>
> (3) WHETHER THE ALJ FAILED TO GIVE APPROPRIATE WEIGHT TO THE CONSULTATIVE AND TREATING PHYSICIANS OPINIONS, RESULTING IN AN ASSESSMENT OF RFC THAT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

(ECF No. 9-1 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant alleges that she is not able to work due to pain, PTSD, and depression (Ex. B4E). She testified that her conditions have gotten worse since the prior decision on November 4, 2020. In a function report filled out in November 2021, the claimant alleged that she is only able to walk for a short time, can only lift 5-10 pounds, and is not able to sit for long due to back pain (Ex. B4E). She reported the use of a wheeled and seated walker, a quad cane, and a shower chair. At the hearing, she testified that she has increasingly severe pain. She testified that her right side goes numb, making it unsafe for her to walk or stand for long, and that she relies on a walker and a quad cane for ambulation. She testified that she has been using her walker more than her cane recently, and that she is not able to walk without them due to risk of falling. She testified that she has pain in her arms and elbows and is not able to lift more than 5 pounds. She reported that she is most comfortable lying on her side.
>
> In terms of her activities of daily living, the claimant reported relying on her daughter for help with bathing, dressing, and cooking food on the stove (Ex.

B4E). She reported that she is able to shop in stores, but her daughter goes with her to lift the bags. At the hearing, she testified that she has relied on an aide who comes to her house for 30 hours Monday through Friday to assist her with her personal care for the prior two months. She testified that the aide helps her with showering, dressing, preparing meals, and light housekeeping. She reported that she relied on her children for approximately three years before acquiring the services of the aide. She testified that she does not do any household chores.

In terms of her mental health, she testified that she has worsening nightmares and is not able to sleep at night, resulting in fatigue during the day. She testified that she sees a counselor for her mental health conditions every two weeks. In her function report, she stated that she can pay attention for about 20 minutes and can follow written and spoken instructions with some limitations. She reported that she gets along with others, but does not participate in social activities due to depression and PTSD.

(ECF No. 6, PageID #: 280-81).

## B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

Although the claimant has been treated for type 2 diabetes mellitus since 2001, treatment records demonstrate good control over her blood sugars with medication and no significant complications (Ex. B1F/22, 305, B2F/9, B5F/17, B7F/4, B17F/10). She began treatment with a new provider in February 2021, reporting no symptoms of hyperglycemia such as polyuria, polydipsia, nocturia, rapid weight loss, or blurry vision (Ex. B1F/304). Physical examination was unremarkable. At an evaluation in May 2021, her blood sugars were noted to be improving and her most recent HgA1C was 7.1% (Ex. B1F/22). Her extremities were normal on examination. At a diabetic foot check in August 2021, she denied numbness, tingling, or burning sensations in her feet, and reported that her blood sugars were controlled (Ex. B2F/9). Examination indicated normal sensation and strength of the lower extremities. At a follow up in November 2021, her glycemic control was noted to be good (Ex. B5F/17). In April 2022, she reported doing well, with stable blood sugars (Ex. B7F/4). At a follow up in June 2022, she was noted to be doing great (Ex. B17F/10). This record does not demonstrate evidence that the claimant's diabetes mellitus results in the significant physical limitations that the claimant has alleged. I note that the record indicates that the claimant told her primary care provider in September 2021 that John Ellis, DPM, diagnosed her with neuropathy in her feet (Ex. B9F/25). Dr. Ellis's treatment notes, however, are illegible (Ex. B12F). Furthermore, evaluations by her endocrinologists and by Timothy Levar, DPM, in August 2021, did not demonstrate significant neuropathy (Ex. B2F/9).

The evidence of record also does not support a finding of extreme limitations arising from the claimant's impairment of the lumbar spine. Records from 2020 indicate a history of reported low back pain with intermittent radiation into the

right thigh (Ex. B1F/240). Examination indicated tenderness, pain, and spasm of the lumbar back, but normal range of motion, sensation, and strength. In April 2021, she sought care for low back pain, which she rated at 7 out of 10, with typical pain ranging from 5 to 10 out of 10 (Ex. B1F/324). Examination demonstrated intact motor and sensory functioning of the upper and lower extremities, but lumbar facet loading testing was positive, suggestive of facet syndrome, and she had tenderness over the right sacroiliac joint (Ex. B1F/326). She underwent a neurological evaluation in September 2021 for reported right lower extremity numbness when standing for too long (Ex. B2F/5). She denied weakness associated with this numbness but stated that sometimes her leg feels like it will go out. She reported a history of one fall, on Thanksgiving 2020. She denied back pain. Motor examination was limited by pain, but she displayed full strength apart from mild right hip flexor weakness. Her sensory perception was mildly diminished in the distal bilateral upper and lower extremities and her gait was antalgic. She was noted to use a cane, and to have some difficulty walking on heels, toes, and tandem gait. X-ray imaging indicated degenerative disc disease with endplate spondylosis and disc height loss at L3-4 through L5-S1, but an MRI of her lumbar spine from June 2021 was unremarkable (Ex. B1F/111, 331). Her neurologist stated that her right thigh numbness is most likely related to meralgia paresthetica, with entrapment of the lateral femora cutaneous nerve due to tight clothing or weight gain, and that her symptoms of tailbone pain and right knee buckling were more likely related to arthritis. She was referred for physical therapy.

She again sought care for lower back pain with radiation into the right lower extremity in December 2021 (Ex. B5F/14). She denied numbness or tingling. On examination, her gait was normal, she displayed full 5/5 strength and intact strength, her range of motion of the lumbar spine was full, and no pain was noted on palpation of the lumbar spine. Physical therapy for core stabilization was recommended. At a physical therapy appointment in January 2022, the claimant was noted to use a rollator walker, with reported limitation due to pain with walking, standing, and sitting (Ex. B5F/5). In March 2022, she sought emergency care for back pain for 2 weeks (Ex. B7F/17). She denied any upper or lower extremity numbness or weakness, however, and no gait or balance disturbance was noted. I additionally note that the claimant's body mass index has been measured in excess of 39.5 kg/m2, within the obese range. I considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity pursuant to SSR 19-2p (Ex. B1F/5). This record is not consistent with the claimant's alleged extreme limitations and need for a rolling walker.

Records from Anabelle Morales Mena, M.D., provide the most significant evidence of severe physical limitation. In December 2020, the claimant sought evaluation for muscle stiffness and joint pain, particularly in her elbows, lower back, knees, and toes (Ex. B1F/142). She reported difficulty getting dressed and cleaning herself and use of a cane for ambulation. She reported a recent fall at Thanksgiving after standing for about 30 minutes and experiencing numbness in her right thigh. Examination demonstrated tenderness to palpation throughout, particularly in the spine, SI joints, elbows, and knees (Ex. B1F/151). Her muscle

4

tone and bulk were noted to be adequate. Imaging of her elbows, feet, knees, and hips was generally unremarkable, with mild patellofemoral and tibiofemoral osteoarthritis of the knees and mild spurring (Ex. B1F/161). She was diagnosed with spondyloarthritis and prescribed Sulfasalazine. In February she reported no response to medication and requested a prescription for THC (Ex. B6F/39).

In February 2021, the claimant sought emergency care for bilateral arm pain in her elbows and forearms, aggravated by lifting things (Ex. B1F/117). She denied any falls or numbness, tingling, or weakness in her extremities. Examination and imaging were unremarkable (Ex. B1F/121). In May 2021, underwent a follow up for elbow pain (Ex. B1F/5). Examination indicated some tenderness to palpation, and she was diagnosed with bilateral lateral epicondylitis (Ex. B1F/11). She continued treatment with Dr. Morales Mena with medication including Tramadol and Gabapentin (Ex. B6F). In September 2021, the claimant requested a prescription for a wheeled walker and a shower chair, which Dr. Morales Mena provided (Ex. B1F/107, B6F/18). In June 2022, the claimant reported symptom including neuropathy in her feet, with shooting pain up her legs, knees giving out, body aches all of the time, heat in her hands, and pain and stiffness in her back (Ex. B19F/2). She reported two near falls due to her knees giving out. I note that apart from her initial evaluation, Dr. Morales Mena's records do not include significant physical examination findings, and appear to be based primarily upon the claimant's reported symptoms (Ex. B1F/107, B6F, B19F).

. . .

Turning to her mental functioning, the claimant has been treated for depression, anxiety, and PTSD. Pharmacology management records indicate symptoms of depression related to recent deaths in her family, treated initially with Paxil, which was discontinued due to side effects of headaches (Ex. B1F/51, 228). She started on Zoloft and initially reported significant improvement. In January 2021, she reported feeling better in terms of her depression but continuing to feel hopeless and worthless (Ex. B1F/50). She reported occasional panic attacks associated with racing heart, confusion, and sweating. She reported sleeping ok but having weird dreams. She requested a return to Paxil due to feeling like a zombie on Zoloft (Ex. B1F/54). Mental status examination indicated intact attention and concentration and friendly, cooperative behavior (Ex. B1F/52). In April 2021, she reported being off her medications for about a month and feeling the same, with intermittent symptoms (Ex. B1F/60). In May and July 2021, she reported being "ok" overall, with a few days when she feels up or down and brief episodes of anxiety (Ex. B1F/70, 80). At a neurology visit in September 2021, she was alert and oriented, with normal language, attention and concentration, recent and remote memory, praxis, and intellectual function (Ex. B2F/6). Her affect was normal, and she did not appear depressed. At a medication management visit in October 2021, she reported doing ok and coping with occasional nightmares (Ex. B4F/67). She denied feeling sad, hopeless, or worthless.

At a consultative examination in January 2022, the claimant reported symptoms including tiredness, difficulty concentrating, flashbacks, difficulty sleeping,

5

nightmares, and not liking people (Ex. B3F). She reported depression and not wanting to participate in the world. She reported treatment with Paxil, but that it is minimally effective, helping her sleep a little, calm her down a little, and not to feel as sad. On examination, she appeared disheveled and was intermittently cooperative. Although she was alert, attentive, and coherent, she was generally oppositional, irritable, and aggressive. She did not display signs of anxiety or identify anxiety within her chief complaint. She was noted to appear to possess low average to below cognitive functioning. She was able to multiply 5x5 but not 12x12. She reported that she does not know how many states there are in the United States or what Washington and Lincoln have in common. Her insight was noted to be fair but her judgment poor. She was diagnosed with PTSD and unspecified bipolar disorder with anxious distress.

Treatment records from 2022 indicate continued stable functioning, with reported symptoms including on and off depression and restlessness (Ex. B10F/13). In June 2022, however, she reported not doing well, with nightmares making it difficult to sleep, flashbacks, daydreaming, confusion, forgetfulness, excessive worry, restlessness, and jitteriness (Ex. B20F/13). On mental status examination, she was alert and fully oriented, with intact attention and concentration, age appropriate language, and no evidence of unusual thought content or perceptions (Ex. B20F/16). She was started on Remeron.

(ECF No. 6, PageID #: 281-284).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since January 1, 2021, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease; spondyloarthritis, diabetes mellitus; obesity; major depressive disorder; anxiety disorder; and post-traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, climb ladders, ropes, or scaffolds, stoop, kneel, crouch, or crawl. She can understand, remember, carry out, and complete simple, routine tasks; interact with

supervisors, coworkers, and the public occasionally; and adapt to occasional changes in a routine workplace.

6. The claimant is capable of performing past relevant work as a polishing machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2021, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(ECF No. 6, PageID #: 277-79, 286-87).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C.  Discussion**

Claimant raises three issues on appeal, arguing that the ALJ erred by (1) failing to find that an assistive device was medically necessary; (2) failing to evaluate her rheumatoid arthritis, DISH, and sensory neuropathy at steps two and three of the sequential evaluation; and (3) failing to give appropriate weight to the medical opinions.

**1.  The ALJ did not err in finding an assistive device was not medically necessary.**

Claimant first argues that the "ALJ failed to properly analyze Ms. Baker's use of a cane and wheeled walker, and the impact on her residual functional capacity." (ECF No. 9-1 at 16). Claimant asserts that "objective medical evidence, testing, a physician's prescription, and [her]

testimony all support the medical necessity for [her] use of a cane." (*Id.* at 18). Claimant argues that the ALJ's finding that an assistive device was not medically necessary is based on "cherry picking of the evidence as the ALJ's evaluation of medical necessity ignores substantial evidence that would support a finding of necessity." (*Id.* at 19). Because the vocational expert testified that "with the use of a rollator for ambulation, all light work would be precluded," Claimant argues that a remand for an award of benefits is warranted due to her age and past relevant work. (*Id.* at 20).

The Commissioner responds that the ALJ "considered the evidence of record and reasonably determined that Plaintiff could perform a range of light work without the need for an assistive device." (ECF No. 11 at 13). The Commissioner argues that the ALJ did not cherry-pick the record but rather discussed that she used her cane or walker "at times, but not at others." (*Id.* at 14). Further, the Commissioner argues that "Plaintiff has failed to produce the required medical documentation outlining the circumstances in which an assistive device was medically necessary" as required by SSR 96-9p. (*Id.*).

> Social Security Ruling 96-9p explains that an ALJ should "find that a hand-held assistive device is medically required," only where there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information."

*Jones v. Comm'r of Soc. Sec.*, 815 F. App'x 926, 931 (6th Cir. 2020) (citing SSR 96-9, 1996 WL 374185, at *7).

The Court finds no error in the ALJ's conclusion that an assistive device was not medically necessary. Contrary to Claimant's argument, the ALJ did not ignore evidence but rather discussed instances where Claimant was observed using her walker as well as instances where she had a normal gait and ambulated without assistance before concluding that, overall, the record did not support that an assistive device was medically necessary. (*See* ECF No. 6,

PageID #: 282-83). While Claimant points to a prescription for a shower chair and wheeled walker to support her argument, the ALJ correctly indicated that "claimant requested a prescription . . . , which Dr. Morales Mena provided." (*Id.* at PageID #: 283). Even if the Court were to accept that Claimant's *requested* prescription amounts to "medical documentation establishing the need for a hand-held assistive device," it would still be insufficient to show medical necessity because it does nothing to "describe[e] the circumstances for which it is needed." SSR 96-9, 1996 WL 374185, at *7); *see Jones*, 815 F. App'x at 931. Because the ALJ properly found that an assistive device was not medically necessary, he was not required to include a limitation for one in his hypothetical to the vocational expert. *See Drew v. Comm'r of Soc. Sec. Admin.*, No. 1:23-CV-01353-DAC, 2024 WL 2294784, at *9 (N.D. Ohio May 21, 2024) ("The ALJ is not required to incorporate the use of a cane in the RFC unless the cane is medically required." (citing *Carreon v. Massanari*, 51, F. App'x 571, 575 (6th Cir. 2002))).

**2.   The ALJ did not err in considering Claimant's impairments.**

Claimant next argues that the ALJ "erred in excluding Ms. Baker's diagnosed rheumatoid arthritis (otherwise referred to in the record as inflammatory arthritis or polyarthropathy), diffuse idiopathic skeletal hyperostosis (DISH), and sensory neuropathy of the bilateral feet" from her severe impairments. (ECF No. 9-1 at 20). Claimant asserts that "[i]n failing to find these to be severe impairments, the ALJ also failed to evaluate whether they met or equaled any of the listings of these impairments" or "to include appropriate restrictions in his assessment of RFC for these conditions." (*Id.*). Claimant argues that the "evidence is clear that [she] suffers from these conditions" and the ALJ "does not evaluate this evidence to determine its support for findings at Step Three of the sequential analysis" to determine whether she met a listing. (*Id.* at 21).

The Commissioner responds that "[a]lthough the ALJ did not mention the diagnosis of rheumatoid arthritis or DISH, Plaintiff cites to no authority that the ALJ was required to discuss

every diagnosis in the record." (ECF No. 11 at 18). As to neuropathy, the Commissioner asserts that the ALJ noted Claimant's report that Dr. Ellis diagnosed her with neuropathy but found Dr. Ellis's records to be illegible and evaluations by Plaintiff's endocrinologist and another podiatrist failed to demonstrate significant neuropathy. (*Id.* at 17). The Commissioner argues the ALJ did not err because he "considered the underlying objective examination findings and imaging studies related to Plaintiff's spine and joints at step two when finding that Plaintiff had the severe impairments of degenerative disc disease and spondyloarthritis" and also considered this evidence and Plaintiff's alleged need for an assistive device before concluding that she did not meet a listing. (*Id.* at 19). As to the RFC, the Commissioner argues that Claimant "has not established that these diagnoses caused additional limitations than those found by the ALJ." (*Id.* at 20).

Claimant's arguments concerning the ALJ's steps two and three findings are unavailing. Because Claimant "cleared step two of the analysis" and the ALJ proceeded to consider her "severe and nonsevere impairments in the remaining steps of the sequential analysis," his failure to find certain impairments severe is "legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). As to step three, while Claimant argues that the ALJ failed to evaluate whether her rheumatoid arthritis, DISH, and neuropathy equaled a listing, she fails to identify the specific listings she alleges she met or point to evidence establishing that she met specific criteria required by each listing. *See Briere v. Kijakazi*, No. 1:21-CV-02323-SO, 2023 WL 2972944, at *6 (N.D. Ohio Feb. 24, 2023) ("[C]ourts have held that a plaintiff waives an argument that the ALJ failed to properly consider a listing where the plaintiff does not present evidence demonstrating that the plaintiff satisfied the criteria for the listing.") (collecting cases), *report & recommendation adopted*, 2023 WL 2673190 (N.D. Ohio Mar. 29, 2023). Thus, the remaining

question is whether the ALJ properly accounted for all of Claimant's impairments in formulating the RFC.

"When formulating an RFC, an ALJ must consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alterations omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013)).  The ALJ must do so because

> [w]hile a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted).  Said differently, "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions." *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).

Here, the ALJ found that Claimant could perform light work, "except she can occasionally climb ramps and stairs, climb ladders, ropes, or scaffolds, stoop, kneel, crouch, or crawl" and "can understand, remember, carry out, and complete simple, routine tasks; interact with supervisors, coworkers, and the public occasionally; and adapt to occasional changes in a routine workplace." (ECF No. 6, PageID #: 279). The ALJ developed the RFC after reviewing the medical record and considering Claimant's subjective complaints, Claimant's daily activities, and the medical opinions. (*Id.* at PageID #: 280-85).

12

Beyond asserting that the ALJ "failed to include appropriate restrictions in his assessment of RFC for these conditions," Claimant fails to make any argument as to what additional limitations were warranted based on her arthritis, DISH, and neuropathy. The simple fact that Claimant was diagnosed with these conditions does establish that her work ability was limited because of them. *See Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). Despite carrying the evidentiary burden, Claimant wholly fails to point to evidence of any limitations she experienced as the result of these conditions. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]"). Because Claimant has not pointed to any evidence in the record to support limitations, there was nothing additional for the ALJ to consider in formulating the RFC. *Helwagen v. Comm'r of Soc. Sec.,* No. 5:22-CV-01467, 2023 WL 3727253, at *17 (N.D. Ohio Apr. 20, 2023) (noting that where claimant "presented no arguments in support of how or why these non-severe impairments should have altered the ALJ's RFC," substantial evidence supports the ALJ's determination that the impairments did not support a finding of disabled), *report and recommendation adopted*, No. 5:22CV1467, 2023 WL 3726575 (N.D. Ohio May 30, 2023).

Thus, the Court finds that substantial evidence supports the ALJ's RFC such that the decision should not be disturbed.

### 3.  The ALJ did not err in considering the medical opinions.

In her final argument, Claimant challenges the ALJ's treatment of the medical opinions.

For claims filed after March 27, 2017, the regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling

13

weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 404.1520c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 404.1520c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c).

### a. State agency physicians

The ALJ summarized his consideration of the State agency physicians' opinions:

> The opinions of the State agency medical consultants, Dana Schultz, M.D., and W. Scott Bolz, M.D., are generally persuasive (Ex. B3A, B4A, B7A, B8A). Drs. Schultz and Bolz adopt the residual functional capacity finding of the prior decision of November 9, 2020, that the claimant is capable of a range of light work under AR 98-4. These opinions are supported by a review of the available evidence, including the claimant's September 2021 neurological evaluation, which do not indicate significant worsening of the claimant's impairments (Ex. B2F/5). Furthermore, apart from the statements of Dr. Morales Mena, the record is generally consistent with a finding that the claimant is capable of a range of light work, as physical examinations and imaging studies have not demonstrated severe abnormalities or deficits (Ex. B1F/326, B2F/5, B5F/14, B7F/17).

(ECF No. 6, PageID #: 285).

Claimant argues that the "ALJ's acceptance of the non-treating, non-examining physician's report is based on nothing more than the conclusory statement that it was 'supported by a review of the evidence' and was consistent with the finding that Ms. Baker could perform light work citing to some benign findings" but ignores a "large swatch of medical evidence demonstrating objective limitations resulting from pain and inflammation." (ECF No. 9-1 at 24). The Commissioner asserts that in finding the State agency opinions persuasive, "the ALJ found they were supported by their review of the medical evidence available at the time, including Plaintiff's September 2021 neurological examination showing no significant worsening of Plaintiff's impairments" and "were generally consistent with Plaintiff's physical examinations and imaging that had not demonstrated severe abnormalities or deficits." (ECF No. 11 at 21).

Notably, the ALJ recognized that the State agency physicians concluded Claimant could perform light work based on a previous decision, which they accepted in accordance with SSR 98-4. (ECF No. 6, PageID #: 285). SSR 98-4 addresses the impact of the Sixth Circuit's decision in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and provides:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt [a finding of a claimant's RFC] from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSR 98-4, 1998 WL 283902, at *3. Subsequently, in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), the Sixth Circuit clarified that *Drummond* should not be read to hold that an ALJ is *always* bound by a previous disability determination, but rather "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." 893 F.3d at 932. The Sixth Circuit noted,

however, that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

Here, the ALJ found that he was not bound by the prior RFC determination because "new and material evidence, including the claimant's diagnosis with PTSD support[ed] a different finding" and there was "a change in the regulations regarding the claimant's musculoskeletal impairments." (ECF No. 6, PageID #: 285). Nevertheless, the ALJ explained that the current State agency opinions adopting the previous RFC were supported by a neurological evaluation which did "not indicate significant worsening of claimant's impairments" and was consistent with the medical records because "physical examinations and imaging studies have not demonstrated severe abnormalities or deficits." (*Id.* at PageID #: 285). The cited medical records indicate only minor abnormalities on examination or that Claimant had complained of the same pain for years such that it was not a new complaint. (*Id.* at PageID #: 958, 973-74, 1175, 1255). Thus, after providing the fresh review required by *Earley*, the ALJ found the opinions persuasive because the new evidence did not warrant a change in the RFC from the previous determination. (*Id.* at PageID #: 285). Substantial evidence supports this decision such that the ALJ did not err in considering the State agency physicians' opinions.

### b. Dr. Whitlow

The ALJ considered Dr. Whitlow's opinion in conjunction with the State agency psychological consultants' opinions:

> The opinions of the State agency psychological consultants, Cindy Matyi, Ph.D., and Jennifer Swain, are generally persuasive (Ex. B3A, B4A, B7A, B8A). Dr. Matyi adopted the prior decision under AR 98-4, but Dr. Swain noted that the claimant's recent diagnosis of PTSD is new and material evidence constituting a change in her mental condition and declined to do so. Both opinions, however, are generally consistent with each other, indicating moderate limitations in all areas of mental functioning. These limitations are supported by the findings of the consultative examiner, including the claimant's aggressive and irritable demeanor,

her limited fund of knowledge, and her poor judgment (Ex. B3F). These findings also support the opinion of the psychological consultative examiner, Natalie Whitlow, Ph.D., stated in January 2022 that the claimant appears to have limitation in carrying out instructions, concentration, persistence pace, and attention, interacting with others, and responding appropriately to work pressures (Ex. B3F). This opinion is vague in terms of the severity of these limitations, and is therefore only partially persuasive. These opinions are also consistent with the claimant's treatment records, which indicate stable functioning with medication, but some continued reported symptoms (Ex. B1F/52, 70, B4F/67, B10F/13).

(ECF No. 6, PageID #: 285).

Claimant asserts that "the ALJ found that . . . while supported by her examination, [Dr. Whitlow's] opinion was unpersuasive because the 'limitations do not specify the claimant's functional capabilities'" and argues that this "is an inaccurate and unsupportable evaluation of the functional mental health limitations" because the report "is quite specific as to the severity of Ms. Baker's limitations." (ECF No. 9-1 at 24-25). The Commissioner responds that "[a]s the Sixth Circuit and this Court have held, an ALJ can properly reject a physician's opinion for being vague and failing to quantify (or qualify) the specific nature of a claimant's limitations." (ECF No. 11 at 24).

As an initial matter, while Claimant cites to the current decision, the language she quotes concerning the ALJ finding Dr. Whitlow's opinion unpersuasive because the "limitations do not specify the claimant's functional capabilities" actually appears in a prior decision that is not at issue on this appeal. (*See* ECF No. 6, PageID #: 339). While the previous ALJ found the opinion unpersuasive, the ALJ here found the opinion partially persuasive, noting that the opinion was "vague in terms of the severity of [Claimant's] limitations." (*Id.* at PageID #: 285). To the extent Claimant intended to challenge the current ALJ's finding that the opinion was only partially persuasive, the Court finds no error. The ALJ indicated that Whitlow's opinion that Claimant experienced "limitation in carrying out instructions, concentration, persistence pace, and attention, interacting with others, and responding appropriately to work pressures" was supported

by her own findings, "including the claimant's aggressive and irritable demeanor, her limited fund of knowledge, and her poor judgment." (*Id.*). The ALJ also found that the opinion was consistent with the medical record, citing records indicating Claimant had slow speech and thought process and experienced depression but reported "doing ok" on multiple occasions. (*Id.*; *see id.* at PageID #: 684, 702, 1155, 1327). Thus, the ALJ adequately explained her consideration of the supportability and consistency factors and further indicated that she found the opinion only partially persuasive because it was "vague in terms of the severity of these limitations." (*Id.* at PageID #: 285). And while the opinion is detailed and indicates Claimant has limitations, it does not "propose any *specific* functional limitations." *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018) (emphasis added) (finding no reversible error when the ALJ found an opinion vague based on failure to propose specific limitations). Thus, substantial evidence supports the ALJ's conclusion with respect to Dr. Whitlow's opinion.

### c. Nanci Pane

After considering the opinions of the State agency psychological consultants and Dr. Whitlow, the ALJ also considered the opinion of Nanci Pane, Claimant's therapist:

> These treatment notes do not, however, support the statements of Nanci Pane, LPCC, who filled out a form questionnaire in September 2021, indicating that the claimant has moderate, marked, and extreme limitations in all areas of mental functioning (Ex. B1F/32). Ms. Pane wrote that the claimant's PTSD symptoms have severely limited the claimant's ability to comprehend, remember, or follow instructions. The mild to moderate reported symptoms in these records are not consistent with the extreme limitations indicated, and Ms. Pane does not provide any narrative support for this level of limitation.

(ECF No. 6, PageID #: 285).

While the ALJ does not indicate how persuasive he found this opinion, Claimant asserts that "it is apparent that he did not find it persuasive" after improperly concluding that the opinion was unsupported by the record and inconsistent with the mild to moderate symptoms in the records. (ECF No. 9-1 at 25-26). The Commissioner argues that the ALJ did not err in

considering Ms. Pane's opinion because "[a]lthough the ALJ did not specifically assess the persuasiveness of [this] opinion," he found it unsupported because "Ms. Pane did not provide any narrative support for the level of limitation assessed" and inconsistent "with her own treatment records showing only mild to moderate symptoms." (ECF No. 11 at 24).

The Court agrees with both parties that despite failing to assign a specific weight to this opinion, the ALJ's decision makes clear that he found it unpersuasive. Further, the Court agrees with the Commissioner that the ALJ did not err in reaching this conclusion. The ALJ's consideration of the supportability factor is evidenced by his statement that "Ms. Pane does not provide any narrative support" for her opined extreme limitations. (ECF No. 6, PageID #: 285). Review of the report confirms that while Pane stated that Claimant's "PTSD symptoms have severely limited [her] ability to comprehend, remember or follow instructions" (*Id.* at PageID #: 665), Pane failed to include any explanation—or citation to her own records—to support her findings of marked limitations in other, unrelated areas. (*Id.* at PageID #: 664-65). As to consistency, the ALJ indicated that "[t]he mild to moderate reported symptoms" in the records discussed in connection with Dr. Whitlow's opinion were "not consistent with the extreme limitations indicated" by Pane. (*Id.* at PageID #: 285). Thus, the ALJ adequately explained his consideration of the supportability and consistency factors, and substantial evidence supports his decision to find Pane's opinion unpersuasive.

### d. Dr. Morales Mena

The ALJ set forth the following summary of Dr. Morales Mena's opinions and explained his consideration of them:

> Anabelle Morales Mena, M.D., filled out a form questionnaire in March 2021 indicating that the claimant is capable of an extremely reduced range of sedentary work, with occasional lifting of less than 5 pounds, zero hours standing or sitting without interruption, no climbing, crouching kneeling, or crawling, the need to elevate legs at will, additional breaks of greater than 4 hours in a workday, and the need for a cane (Ex. B1F/230). She filled out another questionnaire in June

2022, indicating similarly extreme limitations, including need for a walker occasional lifting of 5 to 10 pounds, and sitting and standing of less than 30 minutes at a time (Ex. B11F, B14F). This opinion is not persuasive. As discussed above, Dr. Morales Mena's treatment notes following her initial evaluation of the claimant do not include detailed physical examination findings to support these extreme limitations (Ex. B1F/107, B6F, B19F). Furthermore, these limitations are not consistent with the physical findings of examinations by other providers, which have generally demonstrated mild to moderate impairment (Ex. B1F/326, B2F/5, B5F/14, B7F/17).

(ECF No. 6, PageID #: 284-85).

Claimant argues that the ALJ failed to acknowledge that Mena's initial examination is consistent with her report, does not consider positive ANA and Vectra findings that support Morales Mena's opinion, and improperly cherry picks the record. (ECF No. 9-1 at 26-27). The Commissioner asserts that the ALJ found the opinions not persuasive because the "extreme limitations were not supported by [her] own treatment records," which after her initial evaluation "did not contain detailed physical examination findings," and were "not consistent with the physical examination findings of other providers, which had generally demonstrated mild to moderate treatment." (ECF No. 11 at 22).

The Court finds no error in the ALJ's treatment of Dr. Morales Mena's opinions. The ALJ considered the supportability factor by explaining that "Dr. Morales Mena's treatment notes following her initial evaluation of the claimant do not include detailed physical examination findings to support these extreme limitations." (ECF No. 6, PageID #: 285). The cited medical records include Claimant's reports to Dr. Morales Mena and some test results but no notes of examinations to substantiate Claimant's reports. (*See generally id.* at PageID #: 1194-1238, 1552-57). While Claimant faults the ALJ for not discussing the positive ANA and Vectra findings that she asserts support the opinions, these results are included in the very exhibit the ALJ cites. (*See id.* at PageID #: 1195, 1215). Thus, there is no reason to believe that the ALJ did not consider this evidence in reaching his conclusion. *Conner v. Comm'r of Soc. Sec.*, 658 F.

App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)) ("[W]e do not require an ALJ to discuss every piece of evidence in the record to substantiate the ALJ's decision."). The ALJ also considered consistency, explaining that the limitations in the opinion were "not consistent with the physical findings of examinations by other providers, which have generally demonstrated mild to moderate impairment." (ECF No. 6, PageID #: 285).

Thus, the ALJ appropriately considered the supportability and consistency factors and his conclusion that the opinions were unpersuasive is supported by substantial evidence. While Claimant argues the ALJ cherry-picked the evidence in reaching this conclusion, as this Court has previously recognized, "[w]hat some describe as 'cherry-picking' may more neutrally be termed weighing the evidence." *Zeigler v. Comm'r of Soc. Sec.*, No. 5:23-CV-00068-DAR, 2023 WL 8769790, at *8 (N.D. Ohio Nov. 1, 2023), *report & recommendation adopted*, 2024 WL 1242333 (N.D. Ohio Mar. 21, 2024) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)). But it is not the role of this Court "to reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).  Because substantial evidence supports the ALJ's conclusion, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

Because the ALJ properly considered each of the medical opinions, no reason exists to overturn his decision.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: June 21, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE